UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Key West Division)

Case No.: 4:23cv10069

JAMES R. SANER, II, as Personal
Representative of the Estate and
Survivors of KIRA LYNN SANER,

      Plaintiff,

vs.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

      Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, JAMES R. SANER, II, as Personal Representative of the Estate and Survivors of KIRA LYNN SANER (together, "SANER"), by and through the undersigned attorney, sues the Defendant, STATE FARM MUTUAL AUOTOMOBILE INSURANCE COMPANY, (hereinafter "STATE FARM"), and alleges:

## GENERAL ALLEGATIONS

1. This is an action for damages exceeding SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), excluding costs, interest, and attorneys' fees.

1

2. At all times material hereto, Plaintiff, SANER, has been a citizen of the State of Florida; specifically, Monroe County, Florida.

3. At all times material hereto, Defendant, STATE FARM, was and remains incorporated in the State of Illinois, with its principal place of business in Bloomington, Illinois. Therefore, STATE FARM is a citizen of Illinois for diversity jurisdiction.

4. Venue is proper in this judicial district because the corporate defendant has sufficient contacts in said district, and because a substantial part of the events or omissions giving rise to the claim occurred in this district.

### GENERAL ALLEGATIONS

5. Defendant, STATE FARM, issued to Jeffrey Allen Schnierle a written liability insurance contract, policy number G85 2094-A03-59 (hereinafter the "State Farm Policy"). A copy of said contract is in STATE FARM's possession.

6. The State Farm Policy was intended to cover and indemnify Schnierle and his estate for bodily injury and property damage liability arising out of the operation of 2017 Ford Escape bearing vehicle identification number 1FMCU099HUD66996, to the extent of the policy's bodily injury liability limits of $25,000.00 per person and $50,000.00 per occurrence.

7. At all times material herein, the above-referenced contract was in effect and Schnierle and his estate were entitled to the coverages as set forth in the State Farm Policy.

8. Kira Lynn Saner was a beneficiary of the State Farm Policy pursuant to *Thompson v. Commercial Union Ins. Co. of New York*, 250 So. 2d 259 (Fla. 1971).

9. On or about October 30, 2021, Kira Lynn Saner was wrongfully killed in Monroe County, Florida when Schnierle negligently operated his covered 2017 Ford Escape and struck Ms. Saner, who was operating a moped, causing her to be violently ejected onto the road and killed.  Mr. Schnierle violated Ms. Saner's by turning left in front of her, causing the deadly crash.

10. At the time of the crash, Schnierle was legally intoxicated.

11. Moments after the crash, Schnierle killed himself in a nearby parking lot.

12. At the time of her tragic death Ms. Saner's statutory survivors under Florida's Wrongful Death Act included her husband, James Russell Saner, II, and her two minor children, Trenton Daniel Saner and Isabella Malanie Borders.

13. The violent nature of the crash, Ms. Saner's resulting death, and the sensational nature of Schnierle's suicide immediately following the crash attracted media attention on or about October 30, 2021, that would have alerted STATE FARM of the aggravated liability of which its insured was exposed.

14. Defendant, STATE FARM, was timely notified of the crash and the bodily injury claim of SANER, and at all material times hereto had sufficient information about the SANER claim to compel a prompt, timely tender of the policy limits.

15. At all material times hereto, Defendant, STATE FARM, knew or should

have known that the injuries and damages suffered by SANER presented a virtually certain risk of financial exposure to Schnierle's estate in excess of Schnierle's policy limits, in that the value of the SANER claim was clearly worth well in excess of the $25,000.00 bodily injury liability limits.

16. On November 10, 2021, STATE FARM wrote to James Russell Saner, II, and acknowledged its duty to promptly tender the available $25,000.00 bodily injury liability policy limits by enclosing a release to discharge "Jeffery Schnierle and Tracie Sieve" from liability for the October 30, 2021 crash in exchange for the $25,000.00 policy limits. STATE FARM's insured was Jeffrey Schnierle, not Jeffery Schnierle, and it was dubious as to whether Tracie Sieve was even an insured under the STATE FARM policy. The November 10, 2021 correspondence to Mr. Saner did not enclose a check for the policy limits; accordingly, there was no tender of the policy limits at that time.

17. On March 26, 2022, or 168 days after STATE FARM first sent Mr. Saner correspondence acknowledging that STATE FARM *should* tender its policy limits, Mr. Saner sent an email to STATE FARM expressing his frustration with STATE FARM's glacial pace of settling the clear liability SANER claim: "You have paid absolutely nothing regarding this claim, you have acknowledged policy limit & totaled vehicle loss. It has been over 90 days since the accident. Kira Lynn Saner used to work in this Winter Haven call center under Wardlaw Claims services. Your failure to pay anything seems disrespectful of the Dead & your unwillingness to pay current fair

market value of totaled vehicle." A copy of this correspondence is attached hereto as Exhibit "A."

18. Apparently, STATE FARM failed to timely tender a settlement check for the policy limits because STATE FARM thought it could wait to see whom was appointed as the Personal Representative of the Estate of Kira Lynn Saner. However, in 2005, in *Infinity Ins. Co. v. Berges*, the Florida Supreme Court made it clear that an insurer cannot wait until a Personal Representative is appointed before tendering policy limits to attempt to settle a case brought on behalf of the decedent.

19. On April 4, 2022, SANER's attorney, Sean Cleary, sent an insurance disclosure request to Defendant, STATE FARM, pursuant to section 627.4137, Florida Statutes. Mr. Cleary noted in his correspondence to STATE FARM that STATE FARM had previously provided SANER with a copy of a policy not in effect at the time of the October 30, 2021 crash. A copy of the April 4, 2022, letter is attached hereto as Exhibit "B."

20. On April 6, 2022, SANER sued Schnierle for damages arising out of the October 30, 2021, automobile accident. Said lawsuit came to be known as, and is more particularly described as, *JAMES RUSSELL SANER, II, as Personal Representative of the Estate and Survivors of KIRA LYNN SANER v. DANIELLE GREENBERG as Personal Representative of the Estate of JEFFREY ALLEN SCHNIERLE,* case number 22-CA-236-K, filed in the Circuit Court of the Sixteenth Judicial Circuit in and for Monroe County, Florida.

21. On April 19, 2022, State Farm faxed a letter to Mr. Cleary attaching the State Farm policy "issued to Jeffery Schnierle, in effect on the date of the loss," and instead attached the declarations page for a policy issued to Mr. Schnierle that expired more than one year prior to the October 30, 2021, automobile accident.

22. On August 9, 2023, a Final Judgment was entered against Danielle Greenberg, as Personal Representative of the Estate of Jeffrey Allen Schnierle, and in favor of SANER, in the amount of $7,500,000.00, bearing interest at the legal rate of 7.69% per year and thereafter at the established legal rate (attached hereto as Exhibit "C").

23. STATE FARM knew or should have known, within days of the accident, that SANER's wrongful death claim presented virtually certain excess exposure to Schnierle's estate. Accordingly, STATE FARM should have timely tendered the $25,000.00 per person bodily injury liability policy limits to settle the SANER claim pursuant to Florida law regarding an insurer's good faith, fiduciary duties owed to its insured. *See Boston Old Colony v. Guiterrez*, 336 So. 2d 783 (Fla. 1980) (setting forth insurer's good faith duties); *see also Powell v. Prudential & Casualty Ins. Co.*, 584 So. 2d 12 (Fla. 3d DCA 1991) (where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurance company can be in bad faith for failing to tender its policy limits even before a settlement demand from the plaintiff); *Snowden v. Lumbermens Mutual Casualty*, 358 F. Supp. 2d 1125 (N.D. Fla. 2003) (as the

amount by which an anticipated claim exceeds policy limit increases, the amount of time before a prudent insurer would be expected to tender policy limits decreases).

24. STATE FARM has never "tendered" its $25,000.00 policy limit, as that term is defined under Florida law. *Calder Race Course, Inc. v. Illinois Union Insurance Company*, 714 F. Supp. 1183, 1188-89 (S.D. Fla. 1989).

25. At all material times, Plaintiff fully cooperated with STATE FARM and have performed all conditions precedent to the bringing of this action.

## COUNT I

## INSURANCE BAD FAITH CLAIM AGAINST STATE FARM

26. Plaintiff adopts and re-alleges paragraphs 1-24 above as if fully set forth herein.

27. STATE FARM, pursuant to the insurance contract and Florida law, owed good faith duties to Schnierle and his estate, including but not limited to the following:

   a. to use toward Schnierle's estate the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business;

   b. to exercise such control in handling the claims against Schnierle's estate and in making decisions with regard to both settlement and litigation in good faith and with due regard for the interests of Schnierle's estate;

   c. to timely investigate the claim;

    d. to timely and properly evaluate the claims against Schnierle's estate and the risk to Schnierle's estate;

    e. to initiate settlement negotiations with SANER, as liability against Schnierle and his estate was clear, and the damages suffered by SANER were so serious that a judgment against Schnierle's estate in excess of the policy limits was likely;

    f. to timely tender Schnierle's policy limits to settle the claim of SANER;

    g. to timely advise Schnierle's estate of settlement opportunities;

    h. to advise Schnierle's estate as to the probable outcome of litigation;

    i. to warn Schnierle's estate of the possibility of an excess judgment and to advise Schnierle's estate of any steps that it may take to avoid same;

    j. to timely and properly evaluate the financial exposure to Schnierle's estate presented by the SANER claim;

    k. to settle, if at all possible, where a reasonable, prudent person, faced with the prospect of paying the total recovery, would do so;

    l. to settle the SANER claim against Schnierle's estate within Schnierle's policy limits when, under all of the circumstances, it could have and should have done so, had it acted fairly and honestly toward Schnierle's estate and with due regard for its interests;

    m. to keep Schnierle's estate informed of the claim resolution process and its exposure; and

    n. To do "everything possible to facilitate settlement negotiations." *Harvey v. Geico General Insurance Company*, 259 So. 3d 1, 9 (Fla. 2018)

28. The foregoing duties are fiduciary and non-delegable.

29. Defendant, STATE FARM, is liable for the acts and omissions of its agents, employees or representatives in the handling of the SANER claim against Schnierle and his estate.

30. STATE FARM, through its agents, employees and representatives, breached its duties of good faith to Schnierle and his estate by, including but not limited to:

- a. Failing to use toward Schnierle's estate the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business;

- b. Failing to exercise such control in handling the claims against Schnierle's estate and in making decisions with regard to both settlement and litigation in good faith and with due regard for the interests of Schnierle's estate;

- c. Failing to timely investigate the SANER claim;

- d. Failing to timely and properly evaluate the claims against Schnierle and the risk to Schnierle's estate;

- e. Failing to initiate settlement negotiations with SANER, as liability against Schnierle was clear, and the damages suffered by SANER were so serious that a judgment against Schnierle's estate in excess of the policy limits was likely;

- f. Failing to timely tender its insureds' policy limits to settle the claim of SANER;

- g. Failing to timely advise Schnierle's estate of settlement opportunities;

- h. Failing to advise Schnierle's estate as to the probable outcome of litigation;

    i. Failing to warn Schnierle's estate of the possibility of an excess judgment and to advise Schnierle's estate of any steps that it may take to avoid same;

    j. Failing to timely and properly evaluate the financial exposure to Schnierle's estate presented by the SANER claim;

    k. Failing to settle if at all possible, where a reasonable, prudent person, faced with the prospect of paying the total recovery, would do so;

    l. Failing to settle the SANER claim against Schnierle's estate within the policy limits when, under all of the circumstances, it could have and should have done so, had it acted fairly and honestly toward Schnierle's estate and with due regard for its interests;

    m. Failing to keep Schnierle's estate informed of the claim resolution process and its financial exposure; and

    n. Failing to do "everything possible to facilitate settlement negotiations." *Harvey v. Geico General Insurance Company*, 259 So. 3d 1, 9 (Fla. 2018).

31. As a result of STATE FARM's breaches of its duties of good faith and its failure to settle the SANER claim within policy limits when it could have and should have done so, the Estate of Jeffrey Schnierle now has a judgment against it in the amount of $7,500,000.00 in favor of SANER, which is accruing interest at the legal rate.

32. As a direct and proximate result of the above breaches of its duties of good faith and its failure to settle the SANER claim within policy limits when it could have and should have done so, Plaintiff has sustained damages, including but not

10

limited to the amount of the Final Judgment, and all interest accrued and accruing on said Final Judgment.

WHEREFORE, Plaintiff, JAMES RUSSELL SANER, II, as Personal Representative of the Estate and Survivors of KIRA LYNN SANER, demands judgment against the Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, for damages resulting from the breach of its good faith duties, including, but not limited to, the amount of the excess Final Judgment, all interest on said Final Judgment, costs for this litigation, and such other and further relief as this Court deems just and proper, and further demands trial by jury.

Dated: August 22, 2023  Respectfully submitted,

*/s/ Fred. A. Cunningham*
FRED A. CUNNINGHAM, ESQ. (FL 775487)
MATTHEW T. CHRIST, ESQ. (FL 0119106)
Domnick Cunningham & Yaffa
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, Florida 33410
Phone: (561) 625-6260
Fax: (561) 625-6269
Fred@pbglaw.com; Matthew@pbglaw.com;
Tracy@pbglaw.com
*Counsel for Plaintiff*